IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-358-KS

| | |
|---|---|
| AUDREY RHODIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Audrey Rhodie (Plaintiff) filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court heard oral arguments on November 1, 2017. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties, and considered the arguments of counsel. For the reasons set forth below, Plaintiff's Motion for Judgment

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

on the Pleadings [DE #23] is denied, Defendant's Motion for Judgment on the Pleadings [DE #25] is granted, and the Commissioner's decision is affirmed.

## STATEMENT OF THE CASE

Plaintiff protectively applied for DIB and SSI on April 1, 2010, with an alleged onset date of February 1, 2001. (R. 195, 202, 549.) These applications were denied initially and upon reconsideration and a request for hearing was filed. (R. 96–97, 120–21, 154–55.) A video hearing was held on February 8, 2012, before Administrative Law Judge (ALJ) Edward T. Morriss, who issued an unfavorable ruling on March 9, 2012. (R. 16, 32.) The Appeals Council denied Plaintiff's request for review on June 3, 2013. (R. 1.) Plaintiff then sought judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g). (R. 680–81.) On March 25, 2014, the court granted the Commissioner's unopposed Motion for Remand and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g). *Rhodie v. Colvin*, No. 7:13-CV-162-WW, ECF No. 35 (E.D.N.C. Mar. 25, 2014).

On July 7, 2014, the Appeals Council vacated the previous decision of the Commissioner and remanded the case to an administrative law judge for a new hearing. (R. 686–88.) A hearing was scheduled for February 12, 2015, and despite Plaintiff's timely request for an in-person hearing, the matter was scheduled for a video hearing. (R. 611.) The hearing was continued until November 12, 2015, when an in-person hearing was held before ALJ Morriss. (R. 615.) ALJ Morriss issued an unfavorable decision on January 25, 2016. (R. 570.) On August 19, 2016, the Appeals

2

Council denied Plaintiff's request for review. (R. 537–40.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (first quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); then quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). Relevant evidence

3

includes "any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)).

II. **Disability Determination**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

III. **ALJ's Findings**

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found

Plaintiff had not engaged in substantial gainful employment since February 1, 2001, the alleged onset date. (R. 552.) Next, the ALJ determined Plaintiff had the following severe impairments: "carpal tunnel syndrome, degenerative joint disease, degenerative disc disease, fibromyalgia, obesity, anxiety, and dysthymia." (*Id.*) The ALJ also found Plaintiff's diabetes, irritable bowel syndrome, glaucoma, and restless leg syndrome to be non-severe impairments. (R. 552–53.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 553–57.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to occasional climbing, kneeling, crouching, and crawling. [Plaintiff] is unable to climb ladders. She is limited to occasional overhead reaching bilaterally. She is limited to frequent but not continuous gross and fine manipulation. [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions.

(R. 557.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely credible." (R. 560.) At step four, the ALJ concluded Plaintiff was unable to perform her past relevant work as a dietary aide. (R. 569.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that Plaintiff could perform. (R. 570.) Specifically, the ALJ found Plaintiff capable of

5

performing work as a document preparer, weight tester, and telephone information clerk. (*Id.*)

IV. **Plaintiff's Arguments**

Plaintiff raises two separate but related arguments on review. First, Plaintiff argues that the ALJ improperly assessed Plaintiff's RFC. (Pl.'s Mem. Supp Mot. J. Pldgs. [DE #24] at 8–10.) Second, Plaintiff contends the ALJ failed to give appropriate weight to the opinions of treating physicians when assessing Plaintiff's RFC. (*Id.* at 13–14.) At the core of Plaintiff's objections are the ALJ's findings that she can occasionally reach overhead and frequently engage in gross and fine manipulation.

As to overhead reaching, Plaintiff contends the ALJ erred by failing to explain why he did not further restrict Plaintiff's overhead reaching ability in conformance with a report from consultative examiner Dr. Ferriss Locklear. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 9–10.) In his August 2010 report, Dr. Locklear noted that Plaintiff had crepitus in both shoulders, "difficulty raising her arms above her head," and decreased range of motion of her shoulders. (R. 373–74.) Dr. Locklear apparently referred Plaintiff to Dr. Andrew Simays, a radiologist, for an x-ray of Plaintiff's right shoulder. (R. 375.) Dr. Simays's diagnostic impression was "[m]oderate osteoarthritis of the acromioclavicular joint." (*Id.*) ALJ Morriss noted and discussed this evidence, explaining that Dr. Locklear's findings were "non-specific" and "provid[ed] little insight into [Plaintiff]'s work-related abilities and limitations." (R. 566.) ALJ Morriss explained that despite the problems he identified with Dr. Locklear's findings, these

6

findings were not inconsistent with his finding that Plaintiff could occasionally reach overhead during the course of sedentary work. (*Id.*)

The ALJ sufficiently discharged his obligation under SSR 96–8p to explain how he resolved any material inconsistency between Dr. Locklear's report and the RFC. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996). Dr. Locklear's report did not state that Plaintiff could not reach overhead, merely that she had difficulty with it. Furthermore, the radiologist's diagnostic impression did not indicate severe arthritis. Accordingly, the ALJ restricted overhead reaching to the "occasional" level. Thus, substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to occasionally reach overhead.

As to Plaintiff's manipulative ability, Plaintiff contends the RFC should have limited her to occasional, rather than frequent, manipulative ability based on her carpal tunnel syndrome symptoms. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 10.) In support, Plaintiff cites to a 2015 functional capacity evaluation by treating physician Dr. Pamela Harris (R. 1032–36) and a 2011 functional capacity evaluation by a nurse practitioner (R. 381–36). Both of these functional capacity evaluations state that Plaintiff can engage in gross and fine manipulation approximately twenty-five percent of the time during an eight-hour workday, which would be classified as "occasional" in the Social Security disability context, *see* SSR 83–10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). Plaintiff contends that these two functional capacity evaluations "better reflect the functional limitations of [Plaintiff] both before and

after she was able to obtain treatment" for carpal tunnel syndrome. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 5.)

ALJ Morriss rejected Dr. Harris's opinion as to Plaintiff's manipulative ability because he found it to be "inconsistent with the generally routine and conservative nature of [Plaintiff]'s treatment and the minimal abnormalities reflected in the treatment notes." (R. 568–69.) Plaintiff argues that the ALJ's reference to minimal abnormalities in treatment notes is error because Plaintiff's lack of medical insurance accounts for the lack of treatment notes indicating more severe symptoms. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 10.)

The ALJ summarized relevant evidence regarding Plaintiff's carpal tunnel syndrome treatment after she obtained medical insurance in May 2014 and noted that treatment notes indicate Plaintiff's wrist surgeries, which occurred in July 2014 (R. 878–79) and October 2014 (R. 978–79), were effective. (R. 563.) Plaintiff identifies no error in this summary of evidence, and the undersigned's independent review of the record has revealed none either.

In April 2016, several months after the ALJ issued his decision, Plaintiff obtained treatment from Dr. Kimberly Barrie, the doctor who performed Plaintiff's wrist surgeries and examined her in July 2014 (R. 861) and November 2014 (R. 1039) follow-up visits. (R. 1058–60.) Dr. Barrie's treatment notes from this April 2016 visit indicate normal clinical findings regarding Plaintiff's wrist and hands. (R. 1059.) Dr. Barrie stated that she "[could not] find anything on exam that would explain

8

[Plaintiff's] extreme pain." (R. 1060.) In declining Plaintiff's request for review, the Appeals Council explained that these additional treatment notes from Dr. Barrie support the ALJ's RFC assessment regarding Plaintiff's manipulative ability. (R. 538.)

The April 2016 treatment notes from Dr. Barrie, which were incorporated into the administrative record and specifically referenced by the Appeals Council (R. 538), *see Meyer*, 662 F.3d at 704, further support the ALJ's decision to reject Dr. Harris's 2015 opinion that Plaintiff can only occasionally engage in gross and fine manipulation. Dr. Barrie's treatment notes indicate minimal abnormalities in Plaintiff's wrists and hands approximately six months after Dr. Harris's 2015 opinion and several years after the nurse practitioner's similar opinion. That is substantial evidence to support the Commissioner's finding that Plaintiff can frequently engage in gross and fine manipulation. Furthermore, Dr. Barrie, as the physician who performed two wrist surgeries on Plaintiff and conducted follow-up examinations, would also qualify as a treating physician. Therefore, the court rejects Plaintiff's argument that the Commissioner erred by failing to provide good reasons for rejecting Dr. Harris's 2015 opinion regarding Plaintiff's manipulative ability.

## CONCLUSION

The court finds that the Commissioner's decision in this case is supported by substantial evidence in the record and was reached upon application of the correct legal standard. The court, therefore, DENIES Plaintiff's Motion for Judgment on the

9

Pleadings [DE #23], GRANTS Defendant's Motion for Judgment on the Pleadings [DE #25] and AFFIRMS the Commissioner's decision.

This 12th day of February 2018.

_____
KIMBERLY A. SWANK
United States Magistrate Judge